HENRY CLAY BARNABEE and W. H. MACDONALD doing business as the BOSTONIAN OPERA COMPANY, Appellees, v. LAWRENCE HOLMES, *et al.,* defendants, Appellants. Consolidated with MARTIN NIELAN, Appellant, v. HENRY CLAY BARNABEE, *et al.,* Appellees.

**Attorney's Lien:** SETTLEMENT BY CLIENT WITH OPPOSING PARTY. An agreement between an attorney and client that the former shall receive a share of a sum collected in a certain suit is not binding on the defendant therein, though he has notice thereof, unless the attorney converts his claim into a lien by obtaining a valid judgment on the claim, and reserving a lien thereon, or otherwise; and a settlement in full by the debtor with the client relieves the debtor from all liability.

AUTHORITY TO CLIENT TO COLLECT JUDGMENT. An attorney having secured a judgment for his client in Iowa, and obtained a lien thereon for attorney's fees, sent a transcript of the judgment to his client in Chicago, at the request of the client, to enable the latter to maintain a suit on the sum claimed, and expressed the hope in a letter to the client that the latter could collect the judgment. Letters between the attorney and client showed that the attorney agreed to look to the client for his compensation. *Held,* sufficient to authorize a collection of the entire judgment by the client, which would relieve the judgment debtor so paying the claim from the liability to the attorney.

*Same.* Where an attorney obtaining a judgment for his client and filing an attorney's fee lien thereon, authorizes his client to commence action on the claim in another state, the payment of the judgment rendered in the latter action relieves the debtor from liability to the attorney for the attorney's fee, and the foreign judgment extinguishes the Iowa judgment.

Original Notice: SERVICE ON AGENCY. A trunk belonging to plaintiff was sent, through mistake, to an opera company at S., and was returned to plaintiff on arrival of the company at S., and before its manager had opened an office for the collection of money to be received from entertainments to be given by the company, and the payment of the company's bills. *Held,* that an action against the partnership owning the opera company, for conversion of the trunk, was not one growing out of, or connected with, such office or agency so as to authorize service on the managing agent, under Code, section 3532, providing that where a corporation, company or individual has an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office in all actions growing out of, or connected with, the business of that office or agency.

*Appeal from Woodbury District Court*—HON. FRANK R. GAYNOR, Judge.

WEDNESDAY, FEBRUARY 5, 1902.

LAWRENCE HOLMES brought action, through his attorney, Martin Nielan, against Barnabee *et al.,* in the district court of Woodbury county, for the conversion of certain trunks. Original notice of the suit was served in Sioux City, Iowa, on one Bacon, who, it is claimed, was acting manager and treasurer of the Bostonian Opera Company. The defendants in that action made default, and plaintiff recovered judgment for the sum of $385. Nielan filed an attorney's lien on the judgment for the sum of $200. Thereafter Holmes brought an action in the courts of Cook county, Ill., against the Bostonian Opera Company, on the judgment obtained in this state, and caused a writ of attachment to issue against the property of defendants in that case. After that action was brought, and judgment obtained for $200 and costs, Holmes settled his claim against the opera company for the sum of $250, but has failed and neglected to pay Nielan's fee. Thereafter the Bostonian Opera Company again came to Sioux City, and Nielan caused an execution to issue on the judgment

obtained in that county, to collect the amount of his at-
torney's lien. Barnabee and others thereupon sued out a
temporary writ of injunction against Holmes and Nielan,
restraining them from collecting this judgment. This is
the first case referred to in the above title. Nielan there-
upon brought another action against Barnabee et al. for the
purpose of collecting the amount of his attorney's lien, and
that is the second case referred to. Issue was tendered
in each case, and by agreement they were tried together,
resulting in a defeat for Nielan. Nielan appeals.—*Af-
firmed.*

*Martin Nielan* in *pro. per.*

*William Milchrist* for appellees.

DEEMER, J.—The principal question in the case is the
sufficiency of the service of the original notice in the main
action on Chas. R. Bacon. The plaintiffs in the first ac-
tion mentioned in the title are a copartnership, doing busi-
ness under the name of the Bostonian Opera Com-
pany. They are each and all nonresidents of the
state, and their business is that of giving musical
entertainments in the various cities of the United States.
When Holmes commenced his original action they were at
Sioux City for the purpose of giving an entertainment, and
the notice was served on Bacon, who, it is claimed, was
acting manager and treasurer of the company. Appellant
contends that the service was sufficient, under section 3532
of the Code, which reads as follows: "When a corporation,
company or individual has for the transaction of any busi-
ness, an office or agency in any county other than that in
which the principal resides, service may be made on any
agent or clerk employed in such office or agency, in all
actions growing out of or connected with the business of
that office or agency." In order to bring himself within the

purview of this section, Nielan must show not only that Barnabee *et al.,* had an office in Sioux City, but that the action grew out of some matter connected with the business of that agency, and that service was made on an agent or clerk employed in that office or agency. It may be conceded, for the purpose of the case, that Barnabee *et al.,* had an agency in Sioux City during the time their company was there, which was two nights, and that Bacon was employed in that agency as general manager. But his duties seem to have been to collect the money received for the entertainment, and to pay all the bills in connection therewith. Holmes' claim grew out of the fact that two trunks belonging to him were, without the knowledge of Barnabee or his associates, or any of their agents, by mistake of the railway employes, placed in their special car, in the city of Denver, and carried to Omaha and Sioux City. As soon as discovered,—which as to one of them, was when the car reached Omaha, and, as to the other, when it reached Sioux City,— they were returned to Holmes. When Bacon discovered that one of the trunks belonging to plaintiff was at Sioux City, he caused it to be immediately returned to Holmes. He did nothing at Sioux City which caused Holmes any damage, and the action was in no way connected with his alleged agency at Sioux City. What he did was by way of causing the return of Holmes' trunk, which had been taken by the company through mistake, in Denver, Colo. Surely the action did not grow out of, nor was it in any manner connected with the agency at Sioux City. Bacon was not one of the principals in the transaction, and the service on him can only be sustained in the event it is shown that the action grew out of, or was in some manner connected with the business of the agency at Sioux City. That business was simply to give a musical entertainment in that city, to collect the receipts, and to pay the bills. The trunk matter did not grow out of business of that agency, nor was it in any manner connected therewith; hence service on Bacon did not confer jurisdic-

tion.    In all the cases cited by appellant the business grew
out of, or was connected with, the particular agency in which
the party on whom the service was made was employed.    It
appears that, as soon as the company reached Sioux City,
Bacon went immediately to the car, found Holmes' trunk,
and caused it to be double-checked to Council Bluffs, as per
Holmes' request.    It also appears that there were different
departments of the business done by the Bostonian Opera
Company, each having a manager or chief, and that there
was a baggage master whose duty it was to look after the
baggage; and each manager seemed to be in control of his
department, subject, no doubt, to the general control of Ba-
con.    Appellant argues, however, that Holmes' trunks were
wrongfully retained by Barnabee et al., for three days in
Sioux City, Iowa, and that this detention was a matter
growing out of the agency at Sioux City. The evidence shows,
however, that after leaving Denver the company gave an en-
tertainment at Omaha, where they discovered one of the
trunks, and returned it; that from there they went to Sioux
Falls for a one-night stand, and from Sioux Falls to Sioux
City for two nights.    All baggage except that actually need-
ed for the performance, including Holmes' trunk, was
shipped directly from Omaha to Sioux City, where it re-
mained, awaiting the arrival of the company.    Bacon was
informed of the loss of Holmes' trunks, and as soon as he ar-
rived at Sioux City, he discovered them, or one of them, and
had it immediately re-checked, as stated.    Surely no busi-
ness can grow out of an agency until it be established, and
Bacon's agency was not established until he arrived at Sioux
City.    When he arrived there he immediately caused the
trunks to be returned.    Manifestly, the taking of the trunks
and the delay in returning them, did not grow out of, nor
was it in any manner connected with, the Sioux City agen-
cy, established when Bacon, the agent of the company, ar-
rived there.    There being no service on Barnabee et al., the
judgment rendered by the Woodbury county district court

was without jurisdiction. See, as sustaining our conclusions, *Upton Manufacturing Co. v. Stewart,* 61 Iowa, 209; *State Insurance Co. v. Granger,* 62 Iowa, 273; *Wickens v. Goldstone,* 97 Iowa, 646.

II. Reference has already been made to the fact that, after judgment was rendered in Woodbury county, Holmes commenced action in the courts of Cook county, Illinios, on the same claim. This resulted in a compromise judgment, but, before the compromise was effected, Holmes assigned his claim to another, who really made the settlement. A transcript of the Woodbury county judgment, showing Nielan's lien, was forwarded to Chicago, for use in the proceedings there. There is no evidence, however, that defendants had any notice of Nielan's claims, except as shown by the attorney's lien noted on the judgment from which the transcript was taken. Nielan claims that is was agreed between him and Holmes that he (Nielan) should have one-half of the amount recovered. Of course, this agreement would not be binding on Barnabee *et al.,* even with notice, unless Nielan had in some manner converted his claim into a lien; and even then there could be no lien if the judgment was rendered by a court having no jurisdiction. Assuming, however, that the Woodbury court had jurisdiction, and that Barnabee *et al.,* had notice of plaintiff's lien, it appears that Holmes represented that he had authority from Nielan to settle the claim in full, and that they paid the amount agreed upon with this understanding. Holmes' statements as to authority would not, however, be binding on Nielan unless authorized; and we have, then, this further question: Did Nielan authorize Holmes to settle the claim in full, relying on Holmes to pay him half of what he received? This is purely a question of fact. From a careful examination of the record, we are led to the conclusion that the trial court was justified in finding in the law case that Nielan gave Holmes authority to settle the whole controversy, including his fee. To set out the testimony

from which this result is reached would unduly extend the opinion, and we content ourselves with stating the ultimate facts. Holmes' attorney in Chicago wrote Nielan for a transcript of the Iowa judgment. Nielan acknowledged receipt of the letter, promised to send the transcript on receipt of transcript fee, and expressed the hope that they (meaning Holmes and the attorney) would succeed in obtaining judgment and collecting the same. Thereafter he sent the transcript, and again expressed the hope that they would be able to secure $200; that being the amount tied up by garnishment in the Chicago courts. He thus authorized the Chicago suit, and was undoubtedly bound by any settlement made thereof. This settlement, of course, included the whole claim. The letters which passed between them indicate that Nielan agreed to look to Holmes for his compensation. Nielan filed no lien on the judgment rendered by the Chicago court, and, as that action appears to have been brought by Holmes in his individual capacity, he had authority to collect and settle the full amount thereof; and, as the judgments were for the same cause of action, a settlement of the one, of necessity, extinguished the other.

Importance is attached to the fact that a judgment in favor of Holmes was rendered by the Cook county court. ostensibly, at least, with the authority of Nielan, and satisfaction of that judgment (it being for the same cause of action as the one involved in the Iowa judgment) amounted to an extinguishment of the latter. This, of itself, disposes of the injunction proceedings.

The decree of the trial court, permanently enjoining the sheriff and Nielan from enforcing the Iowa judgment, and the order dismissing the plaintiff's action to recover attorney's fees, are sustained.—AFFIRMED.