WILLIAM S. DAVIDSON, Appellee, v. HENRY L. DOHERTY & COMPANY, Appellant.

No. 40451.

740

March 8, 1932.

Rehearing Denied June 24, 1932.

Deacon, Sargent, Spangler & Hutchison and Lehmann, Hurlburt & Hossfield, for appellant.

Brammer, Brody, Charlton & Parker, for appellee.

Faville, J.—Henry L. Doherty is an individual and a resident of New York. He conducted business in this state under the trade name and style of Henry L. Doherty & Company. No question of a corporation or a partnership is involved in this case.

Appellant Henry L. Doherty had an office or agency in Des Moines, Polk County, Iowa, for the sale of shares of stock. It is alleged that on or about September 2, 1929, the appellant's agent in charge of said office or agency sold to the appellee certain shares of stock through said office or agency in Des Moines.

In this action the appellee seeks a personal judgment against appellant Henry L. Doherty for damages growing out of said sale of said shares of stock. On December 13, 1929, service of an original notice in proper form, duly addressed to appellant, was served on the said agent of appellant in Des Moines, Polk County, Iowa, which agent was then in charge of the said office or agency through which the business involved in this litigation was transacted. Appellant entered a special appearance alleging that Henry L. Doherty is an individual and a non-resident of Iowa, and challenging the jurisdiction of the court over said appellant in this action *in personam*. The lower court held that it had jurisdiction of appellant in said action and entered an order accordingly.

I. Code section 11079 is as follows:

"When a corporation, company, or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

Service was made in this case in full compliance with this statute and under its express provisions.

It is contended that this statute is strictly a local statute, applicable only to residents of a county *in this state* who may be sued in some other county of the state under the circumstances set forth in the statute. In other words, it is contended that said statute is a venue statute applicable only to residents of Iowa. It is argued that not all non-residents of the state are residents of "any other county," as, for example, they may be residents of the District of Columbia or residents of Louisiana, where there are no counties. That question is, however, not involved in this appeal. Appellant did have an office or agency in another county than the one in which he resides. He comes within the very terms of the statute.

A similar contention was made in the early case of Gross v. Nichols, Shepard & Co., 72 Iowa 239, where service on a foreign corporation having an office or agency in this state was involved. We said:

"The defendant contends, however, that the statute does not apply to a foreign corporation, but to a corporation residing in some other county of Iowa. This, it is contended, is implied from the words, 'any county other than that in which the principal resides.' But we do not think that the defendant's position can be sustained. There is nothing in the words used to prevent us from construing the section as meaning that service upon the principal may be made by service upon the agent, when the principal resides elsewhere than in the county of the agency. The courts, we think, have invariably put this construction upon the section, and we see no good reason to think it is not correct."

By its terms, and under our holding, the statute is appli-

cable to residents of *"any other county"* than that in which the principal resides, whether such county be situated in Iowa or in some other state. In other words, the statute does apply to non-residents of Iowa who come within its terms and provisions, as well as to residents. Our construction of the statute has stood since 1887. We are not disposed to depart from it.

II. Does the statute apply to non-resident individuals?

This statute had its origin in the Code of 1851, and in substantially the same language has been the law of the state ever since. We have repeatedly held that jurisdiction can be obtained of foreign corporations maintaining an office or agency in this state, by service in the manner provided by this statute. Locke v. Chicago Chronicle Co., 107 Iowa 390; Moffitt v. Chicago Chronicle Co., 107 Iowa 407; Bradshaw v. Des Moines Ins. Co., 154 Iowa 101; Little v. Threshing Mch. Co., 166 Iowa 651; Bell Jones Co. v. Erie R. R. Co., 168 Iowa 96, 97; Morey v. Standard Sep. Co., 174 Iowa 530; Pugh v. Bothne Co., 178 Iowa 601; Duhigg v. Waterloo Gasoline Engine Co., 189 Iowa 547; American Asphalt Roof Corp. v. Shankland, 205 Iowa 862.

A somewhat similar statute when applied to a foreign corporation doing business within a state has been upheld by the Supreme Court of the United States. See International Harvester Company of America v. Commonwealth of Kentucky, 234 U. S. 579, 58 L. Ed. 1484.

By the very terms of the statute it is made applicable to individuals the same as to corporations. The legislative intent to make it so applicable is obvious. Such has been our construction of the statute. See Gross v. Nichols, Shepard & Co., supra, and Murphy v. Development Co., 169 Iowa 542.

We adhere to our former holdings that the statute is applicable to individual non-residents who come within its express terms and provisions.

III. The question then arises as to whether or not said statute, when applied to non-resident individuals, violates the provisions of the Constitution of the United States.

It is fundamental that a state has no power to arbitrarily exclude an individual citizen of the United States from doing business within the state. Article IV, Section 2, of the United States Constitution provides that "the citizens of each state

shall be entitled to all privileges and immunities of citizens in the several states," and the XIV Amendment of said Constitution provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

Even though a state may not exclude a citizen of another state from doing business therein, the Constitution does not prohibit a state from imposing reasonable conditions upon the citizen of a foreign state who seeks to do business within its borders, and this is especially so when like conditions are imposed upon its own citizens.

The statute in question does not in any manner abridge the privileges or immunities of citizens of the several states. It treats residents of Iowa exactly as it treats residents of all other states. The citizens of each state of the United States are, under this statute, entitled to all the privileges and immunities accorded citizens of this state.

The justice of such a statute is obvious. It places no greater or different burden upon the non-resident than upon the resident of this state. If a corporation, company, or individual resident in one county of this state maintains an office or agency in another county of the state, such corporation, company, or individual may be sued under this statute in the latter county in actions *in personam* that come within the terms of the statute. No good reason can be urged against the justice of a rule that makes such a statute applicable to the non-resident as well as the resident of the state. The latter may, under this statute, be compelled to defend a personal action in another county very far removed from the county of his residence. Why should not the resident who may live merely across a boundary line be equally required to defend in an action *in personam* in a county of this state where such non-resident maintains an office or agency as to matters growing out of such office or agency where proper service is had on the agent? A non-resident who gets all the benefit of the protection of the laws of this state with regard to the office or agency and the business so transacted ought to be amenable to the laws of the state as to transactions growing out of such business upon the same basis and conditions as govern residents of this State.

As is said by the Supreme Court of the United States in

Hess v. Pawloski, 274 U. S. 352, 71 L. Ed. 1091, referring to the state statute there under consideration:

"It makes no hostile discrimination against non-residents, but tends to put them on the same footing as residents."

The opinion in Kane v. New Jersey, 61 L. Ed. 222, is pertinent to the question involved here. Kane was convicted of violating the statute of New Jersey which required all persons operating automobiles on the public highways of that state to have a license to do so, and to appoint the secretary of state as an authority upon whom processes may be served "in any action or legal proceeding caused by the operation of his registered motor vehicle .within the state, against such owner." Kane was a non-resident. The Supreme Court of the United States held the statute to be valid and affirmed the conviction, and among other things said:

"It is not a discrimination against non-residents denying them equal protection of the law. On the contrary, it puts non-resident owners upon an equality with resident owners."

That is exactly what the statute under consideration does.

We hold that the statute does not abridge the privileges or immunities of the citizens of the United States, or deny to non-residents of Iowa equal protection of the law.

IV. Does the statute contravene the due process clause of the 14th Amendment to the Constitution of the United States?

The phrase "due process of law" has been construed by almost innumerable decisions, many of which may be found in Words and Phrases, first, second, and third series, under the caption, "Due process of law."

In Simon v. Craft, 45 L. Ed. 1165, the Supreme Court of the United States said:

"The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied we are governed by the substance of things and not by mere form."

The court also said:

"But the due process clause of the 14th Amendment does not necessitate that the proceedings in a state court should be

by a particular mode, but only that there shall be a regular course of proceedings in which notice is given of the claim asserted, and an opportunity afforded to defend against it. Louisville & N. R. Co. v. Schmidt, 44 L. Ed. 747, * * * and cases cited.''

See, also, Dohany v. Rogers, 281 U. S. 362, 74 L. Ed. 904; Earle v. McVeigh, 91 U. S. 503, 23 L. Ed. 398; McDonald v. Mabee, 243 U. S. 90, 61 L. Ed. 608.

We have repeatedly recognized this general rule. State v. Miller, 132 Iowa 587, 591; Beebe v. Magoun, 122 Iowa 94; Kimball v. Board of Supervisors, 190 Iowa 783, 793; State v. Height, 117 Iowa 650; Jones v. Mould, 151 Iowa 599; Bennett v. Chicago Lbr. & Coal Co., 201 Iowa 770, 775; Brenton v. Lewiston, 204 Iowa 892, 895.

It is frequently stated as a general proposition that the processes of a state court do not extend beyond its borders and that a state can not in general obtain jurisdiction of a non-resident in an action *in personum* unless the defendant is served within the state or appears to the action. To this broad and general statement of the rule there are exceptions, as, for example, where ''there is a waiver or a contract to the contrary.'' Brenton v. Lewiston, supra; McConnell v. Poor, 113 Iowa 133.

Another exception, or more properly speaking, a rule as to what constitutes due notice, is illustrated by the cases upholding statutes where a non-resident of a state, by carrying on certain lines of business or doing certain acts, as dealing in securities or driving an automobile on the public highways, is required, or presumed, to designate an officer or agent in said state upon whom service of notice may be made in actions in said state growing out of the business or acts done. Kane v. New Jersey, supra; Hess v. Pawloski, 71 L. Ed. 1091.

Similarly, there are statutes such as the one under consideration, where a non-resident voluntarily comes within the state and establishes an office or agency and transacts business, and the service of summons is made by *substituted service* upon the agent of the defendant, and the action is one growing out of that office or agency.

Does such a statute meet the requirement of ''notice and opportunity to defend?''

If notice on a public officer, such as a registrar or secretary of state, is sufficient in an action *in personam* against a nonresident, no good reason is apparent why a notice by like substituted service on a party's own agent in charge of his business, in actions growing out of said business, should not be equally valid.

We considered this statute in the case of Thornburg v. Bennett & Co., 206 Iowa 1187. In that case suit was brought in an action *in personam* against a partnership doing business in this state, by service on a purported agent of the partnership. We did not pass upon the constitutionality of the statute, but on the sufficiency of the return to show that the party upon whom service was made was "employed in the office or agency out of which the action grew or with which it was connected." In the discussion of the case we said:

"'* * * the statute attacked is not discriminatory, as was the case of the statutes in the decisions relied upon by defendants, Flexner v. Farson, 268 Ill. 435 (109 N. E. 327); affirmed 248 U. S. 289 (63 L. Ed. 250); Caldwell v. Armour, 1 Penn. (Del.) 545 (43 Atl. 517); Moredock v. Kirby, 118 Fed. 180; Andrews Bros. v. McClanahan, 220 Ky. 504 (295 S. W. 457); Cabanne v. Graf, 87 Minn. 510 (92 N. W. 461)."

We quoted Section 11079, and said:

"Four things are, under this statute, essential to the validity of such service. 1. The defendant must have an office or agency in the county. 2. It must be a county other than that in which he resides. 3. The action must grow out of or be connected with the business of that office or agency. 4. The agent or clerk upon whom service is made must be employed in such office or agency. Barnabee v. Holmes, 115 Iowa 581. As the service was not upon the partners, or any of them personally, and is *substituted service*, all of the elements essential under the statute to the authorization of such service must be shown." (Writer's italics.)

In the attack upon this statute reliance is placed upon the decision of the Supreme Court of the United States in Pennoyer v. Neff, 24 L. Ed. 565. That case involved consideration of a personal judgment obtained against a non-resident on service

solely *by publication.* It was not a case of substituted service upon an agent as in the case at bar. In the Pennoyer case, the court, however, said:

"Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-residents both within and without the state. As was said by the Court of Exchequer in Vallee v. Dumergue, 4 Exch., 290, 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.' "

That is exactly what the statute under consideration does. It provides that a non-resident (as well as a resident), doing business in this state through an office or agency, is subject to actions *in personam* in this state as to such transactions *only* as grow out of said office or agency, and then only where substituted service is made on such agent. When a non-resident defendant establishes an office or agency for the transaction of business in any county in this state under this statute, he thereby voluntarily appoints his own agent, in charge of said office or agency, as one upon whom substituted service in actions *in personam,* growing out of that office or agency, may be made. Service of summons upon such duly appointed agent as to transactions growing out of such agency meets every essential requirement of due process of law.

Again, reliance is placed upon the decision of the Supreme Court of the United States in Flexner v. Farson, 248 U. S. 289, 63 L. Ed. 250, as announcing a different rule than the one we have indicated. It is important that we consider the facts in

that case. The action was brought in the courts of Illinois upon a judgment obtained in the courts of Kentucky. The validity of the Kentucky judgment was involved. In the first place, it is to be noticed that Flexner v. Farson involved a partnership. It was sought to obtain judgment against the *individual partners* who were non-residents of the state, by service upon a purported agent of said *partnership*. It also appeared that the only person so served was *not* the agent of the partnership *at the time of service*. This was admitted by a demurrer. Furthermore, the statute involved applied only to non-residents of the state and not equally to residents. The case is not decisive of the case at bar.

In Thornburg v. Bennett & Co., supra, we said:

"To constitute due process, the agent on whom service is made must be such at the time of the service; for if he is not, he is under no duty to communicate notice to his principal, and there is no presumption that he would communicate it."

In 1927, the Supreme Court of the United States decided Hess v. Pawloski, 71 L. Ed. 1091. This was a civil action for damages growing out of an automobile collision. The defendant was a resident of Pennsylvania. The injury occurred in Massachusetts. The court said:

"No personal service was made on him (defendant) and no property belonging to him was attached."

The service was made under a statute which expressly provided in effect that the use of the public highways by operating an automobile thereon by a non-resident shall of itself be deemed equivalent to the appointment by such non-resident of the registrar as his attorney, upon whom all lawful processes in any action growing out of any accident or collision might be made. The defendant appeared specially and moved to dismiss on the ground that the service on the registrar did not give jurisdiction over him for a judgment *in personam,* and that if the jurisdiction was sustained it would deprive him of his property *without due process of law.* The case was affirmed in the Supreme Judicial Court of Massachusetts in an able opinion by Chief Justice Rugg. See 250 Mass. 22, 144 N. E. 760. After trial below the case was again appealed to the Supreme Judicial

Court of Massachusetts, and the second opinion appears in 149 N. E. 122. The Supreme Court of the United States said the question for their determination was "whether (this statute) * * * contravenes the *due process* clause of the Fourteenth Amendment."

The court recognizes the rule that:

"* * * a state may not withhold from non-resident individuals the right of doing business therein. The privileges and immunities clause of the Constitution, sec. 2, art. 4, safeguards to the citizens of one state the right 'to pass through, or to reside in any other state for purposes of trade, agriculture, professional pursuits, or otherwise.' And it prohibits state legislation discriminating against citizens of other states."

The Supreme Court of the United States turned the decision of the case, not on any question of police power, nor on the privileges and immunities clause of the Federal Constitution, but squarely on the "due process" clause of the 14th Amendment. The case was a civil action for damages growing out of the operation of an automobile. Substituted service was had upon a designated officer who was, by virtue of the statute, made the agent of the defendant.

The court said:

"The measure in question operates to require a non-resident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the non-resident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. It makes no hostile discrimination against nonresidents, but tends to put them on the same footing as residents."

Exactly so in the case at bar. To paraphrase from the opinion of the Supreme Court of the United States: Under our statute, the implied consent to be sued in this state is limited to proceedings growing out of the business transacted through the

office or agency in this state. It is required that the agent shall actually receive a copy of the notice of suit and that it shall be read to him. (Code, 11060). And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. (Code, 11442, 11443, and 11059). It makes no hostile discrimination against non-residents, but actually puts them on the same footing as residents.

What difference is there, under the due process clause of the Federal Constitution, between an action for damages for personal injury and an action for damages for fraud in the sale of stock? Both are strictly actions *in personam* and arise at common law. If jurisdiction can be obtained in one by substituted service on an agent, certainly it can be in the other. If such service is due process of law in one instance it can not be anything else in the other. There is no question of police power in either case. It is strictly and solely a question of "due process of law."

In Wuchter v. Pizzutti, 72 L. Ed. 446, a suit was brought to recover for personal injuries caused by a non-resident defendant. Substituted service was made only on the registrar who, under the statute, was the legal officer upon whom service could be made. The due process clause was again invoked against the statute authorizing such substituted service. In sustaining the validity of the statute, Mr. Chief Justice Taft, after citing authorities, said:

"These cases and others indicate a general trend of authority toward sustaining the validity of service of process, if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice, and that is the principle that we think should apply here."

Applying this test, the statute in question must be upheld as complying with the due process clause of the United States Constitution. The service is made on the agent *then* in actual charge of the agency. The action must grow out of the business of that very agency. Ample time is given the defendant to appear and defend; there is not only "reasonable probability" but practical moral certainty that the defendant will receive actual notice of the pendency of the action.

It may be conceded that there are cases apparently holding to the contrary. Some of these arose under statutes very different from ours. In some the statutes did not apply equally to residents and non-residents. Such cases do not assist us here. Neither are cases from state courts which were decided prior to the pronouncements of the Supreme Court of the United States in Hess v. Pawloski, supra, and Wuchter v. Pizzutti, supra, of persuasive force.

We deem it proper to cite a few of the cases that recognize that such a statute meets the requirement of "due process of law."

In Rauber v. Whitney, 25 N. E. (Ind.) 186, the Supreme Court of Indiana considered a statute almost identical in language (and clearly so in effect) with ours. The defendants were non-residents. Substituted service was made on their agent in an action growing out of the agency. The court said:

"It appears by the answer to the plea in abatement that the appellees had a store in the town of Tipton, in Tipton county, in this state, where the action was commenced; that the cause of action grew out of and was connected with the business of the appellees in that county; and that process was served upon the agents of the appellees in that county in charge of their said business. This conferred jurisdiction on the circuit court of Tipton county, and for that reason the ruling of the circuit court was erroneous."

The trial court had denied jurisdiction.

See, also, Edwards v. Van Cleave, 94 N. E. (Ind.) 596; Ft. Wayne Ins. Co. v. Irwin, 54 N. E. (Ind.) 817; Conkey v. Conder, 37 N. E. (Ind.) 132.

In Guenther v. American Steel Hoop Co., 76 S. W. (Ky.) 419, the Court of Appeals of Kentucky pointed out the distinction between constructive service of process and substituted service such as we have in this case. The court said:

"The general rule is that substituted service of process is equivalent to personal service, and warrants a personal judgment, if made in the manner pointed out by the statute, on the ground that the defendant is presumed to have received the notice."

See, also, Green v. Snyder, 84 S. W. 808 (Tenn.); Moore v. Payne, 35 Fed. (2d) 232; Cohen v. Plutschak, 40 Fed. (2d) 727; Rubin v. Goldberg, 154 Atl. 535 (N. J.); Shushereba v. Ames, 255 N. Y. 490, 175 N. E. 187; Schilling v. Odlebak, 177 Minn. 90, 224 N. W. 694; Seitz v. Claybourne, 231 N. W. 714 (Minn.); Yarborough v. N. C. Park Com'n., 145 S. E. 563 (N. C.).

The true rule in cases of the kind is laid down by the American Law Institute, in the Restatement of the Conflict of Laws, section 90, as follows:

"A state can exercise through its courts jurisdiction over an individual who has done an act or caused an event within the state, as to a cause of action arising out of such act or event, if by the law of the state at the time when the act was done a person by doing the act or causing the event subjects himself to the jurisdiction of the state as to such cause of action."

The statute in question comes squarely within the provisions of this rule. It does not conflict with any provision of the Federal Constitution. Under the record in this case the court obtained jurisdiction over the appellant in the precise manner pointed out by the statute. The statute does not (1) deny to the defendant any rights or immunities granted to citizens of this state; (2) it does not deny to the defendant the equal protection of the law, because it applies equally to residents and nonresidents; (3) it does not deny to the defendant due process of law, because it provides for a substituted service upon the existing agent of the defendant in charge of the defendant's office or agency, and is limited to matters growing out of that agency, and there is "every reasonable probability" that such notice so served will necessarily be brought to the attention of the defendant and afford him ample opportunity to defend. Therefore the statute does not contravene any of the provisions of the Federal Constitution.

It follows that the order of the trial court must be—Affirmed.

EVANS, STEVENS, DE GRAFF, and ALBERT, JJ., concur.

MORLING, J. (dissenting)—Plaintiff's petition alleges "that defendant is a trade name under which Henry L. Doherty is

doing business through his agents and representatives from his office in Des Moines, Iowa;" that September 2, 1929, plaintiff entered into an agreement to purchase 10 shares of stock, which was within the provisions of the securities law; that defendant was engaged in business in the State as a dealer or salesman of securities not exempt under the securities law, but was not registered in the office of the Secretary of State as provided by that law; that November 29, 1929, plaintiff elected to rescind and made tender. He asks judgment for the amount paid on the contract. Service of original notice was made first on E. A. King as an agent and clerk employed in defendant's office in Des Moines. Later service was made on the Secretary of State. Defendant entered special appearance and amendments, duly verified and uncontradicted, showing that Henry L. Doherty & Company is not a corporation or partnership, is an individual, a resident and citizen of New York, at no time material to this controversy a citizen or resident of or within the state of Iowa; that E. A. King has never represented defendant for the purpose of personal service; that defendant never appointed any person his agent for the purpose of being served with original notice of any suit in any court of Iowa save only suits arising out of transactions had under permits issued by the State; that no original notice had been served upon defendant. Plaintiff called King as a witness, who testified to the effect that the office of Henry L. Doherty & Company in Des Moines was opened on January 1, 1926; "that the office of Henry L. Doherty & Company in Des Moines sold on September 2, 1929, 10 shares of Cities Service common stock to the plaintiff; that he was employed in such office at the time of service on him as district manager of Henry L. Doherty & Company in the State; that Henry L. Doherty is not a resident of Polk county; is a resident of New York City, has not been in Iowa since the witness came to the Des Moines agency."

The evidence shows that on July 29, 1929, the Secretary of State received defendant's application under the securities law as a dealer accompanied by defendant's signed consent that "actions growing out of the violation of any provision or provisions of the 'Iowa Securities law' may be commenced against it, the said Henry L. Doherty & Company, in the proper court of any county * * * by the service of any process or pleading

authorized by the laws of the State of Iowa on the Secretary of State * * * as valid and binding as if due service had been made upon the dealer direct.'' The papers are dated June 21, 1929, marked by the Secretary of State as received July 29, 1929, and ''filed 9-27-1929.'' The Secretary of State issued permit dated September 27, 1929. The delay in marking the papers filed and in granting application is not explained.

As the sufficiency of the service is thus attacked at the beginning the burden is upon the plaintiff to sustain it. Thornburg v. James E. Bennett & Co., 206 Iowa 1187.

The question is not what the Federal Constitution and the law ought to be but what they are. This question is not one of the convenience of the citizens of any one state but of the constitutional rights of all citizens of the United States, those of citizens of Iowa in other states as well as those of citizens of other states in Iowa.

In New York Life Ins. Co. v. Dunlevy, 241 U. S. 518, 522, 523, 60 L. Ed. 1140, 1143, 36 Supreme Court Reporter 613, cited in Flexner v. Farson, 248 U. S. 289, 63 L. Ed. 250, as the basis of the decision there rendered it is declared:

''The established general rule is that any personal judgment which a state court may render against one who did not voluntarily submit to its jurisdiction, and who is not a citizen of the state, nor served with process within its borders, no matter what the mode of service, is void, because the court had no jurisdiction over his person. Pennoyer v. Neff,'' 95 U. S. 714, 24 L. Ed. 565, Goldey v. Morning News, 156 U. S. 518, 521, 39 L. Ed. 517, 518; New Mexico ex rel. Caledonia Co. v. Baker, 196 U. S. 432, 444, 49 L. Ed. 540, 545; Mexican Central Ry. Co. v. Pinkney, 149 U. S. 194, 209, 37 L. Ed. 699, 705; Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co., 61 L. Ed. 610, 243 U. S. 93; Rea v. Rea, 123 Iowa 241; Raher v. Raher, 150 Iowa 511; Pond v. Simpson, (Mass.) 146 N. E. 684; Redzina v. Provident Inst. for Savings (N. J.), 125 Atl. 133.

Without such service the court may not render a personal judgment even though it is proposed to restrict its effect and enforcement to the state and to give it no extraterritorial effect. Riverside & D. R. C. Mills v. Menefee, 237 U. S. 189, 59 L. Ed. 910; Freeman v. Alderson, 119 U. S. 185, 30 L. Ed. 372.

We have presented here for determination not a question of discrimination in favor of citizens of the state against the citizens of other states or denial of the equal protection of the laws. We have presented solely the question of jurisdiction of the person of a citizen of another state not found and served with process within this state. The laws of the state and the process issued by its courts have no force outside of its boundaries. The state can exercise no power over the person of an individual citizen of another state without his consent unless it finds him within the territory over which it has jurisdiction.

By the rendition of the judgment asked for by the plaintiff the state through its courts would be exercising power over the person of a citizen of another state who owes it no allegiance, not found here and not consenting thereto. (See Blackmer v. United States, 284 U. S. 421.)

Defendant is an individual and a citizen of another state of the United States. By Section 2, Article 4, of the Federal Constitution, ''The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.'' Under this provision the defendant has the constitutional right to free ingress and egress into and from the state of Iowa and to freely engage in lawful business within the state. Paul v. Virginia, 8 .Wall. 168, 180; Ward v. Maryland, 12 Wall. 418, 430; United States v. Wheeler, 254 U. S. 281, 65 L. Ed. 270.

''A state may not withhold from non-resident individuals the right of doing business therein.'' Hess v. Pawloski, 274 U. S. 352, 355, 71 L. Ed. 1091, 1092. The state of Iowa has no power to exclude defendant from doing business in Iowa or to prescribe conditions upon which he may be admitted to do business in the state. Flexner v. Farson, 248 U. S. 289, 63 L. Ed. 250.

Flexner v. Farson was an action upon a judgment rendered by a Kentucky court. The declaration alleged ''that the transaction in respect of which the judgment was rendered took place at Louisville, Kentucky, and that at that time the defendants were doing business there as partners through Washington Flexner, who was and continued to be their agent. * * * That the defendants were non-residents and that the service of summons

of the Kentucky suit was made upon Washington Flexner in accordance with a Kentucky statute," which declared:

"In actions against an individual residing in another state, or a partnership, association or joint-stock company, the members of which reside in another state, engaged .in business in this State, the summons may be served on the manager, or agent of, or person in charge of, such business in this State, in the county where the business is carried on, or in the county where the cause of action occurred."

Defendant (one of the partners) "pleaded that the defendants in the former suit did not reside in Kentucky, were not served with process, and did not appear; that Washington Flaxner was not their agent at the time of service upon him."

It is true that plaintiff demurred to this plea, but neither the Supreme Court of Illinois (109 N. E. 327) nor the Supreme Court of the United States held, or assumed, that Washington Flexner was not the agent of the defendant upon whom service might legally be made under the Kentucky statute. On the contrary, the Kentucky court had necessarily upheld the service and the statute under which it was made. On the only question discussed by the Supreme Court of the United States the court said:

"There was an appeal to the Supreme Court of the State on the ground that the court below did not give full faith and credit to the Kentucky judgment and erred in holding the Kentucky statute as to service unconstitutional. The Supreme Court affirmed the judgment below. 268 Ill. 435. The same errors are alleged here.

"It is argued that the pleas tacitly admit that Washington Flexner was agent of the firm at the time of the transaction sued upon in Kentucky, and the Kentucky statute is construed as purporting to make him agent to receive service in suits arising out of the business done in that state. On this construction it is said that the defendants, by doing business in the state, consented to be bound by the service prescribed. The analogy of suits against insurance companies based upon such service is invoked. Mutual Reserve Fund Life Association v. Phelps, 190 U. S. 147. But the consent that is said to be im-

plied in such cases is a mere fiction, founded upon the accepted doctrine that the states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in. Lafayette Ins. Co. v. French, 18 How. 404. Pennsylvania F. Ins. Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93, 96. The state had no power to exclude the defendants, and on that ground, without going farther, the supreme court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void. If the Kentucky statute purports to have the effect attributed to it, it cannot have that effect in the present case. New York Life Ins. Co. v. Dunlevy, 241 U. S. 518, 522, 523.''

The Supreme Court of Illinois (109 N. E. 327) decided that ''the statute in question, so far as it applies to personal service upon individuals or partnerships in this State (Illinois) must be held unconstitutional.'' This was the only federal question presented.

It seems to me clear that Flexner v. Farson decided that the state had no power to exclude the individual defendant from doing business within it; that the individual defendant by exercising his constitutional right to do business within the state did not consent to be bound, and was not bound, by a statute permitting service on an agent in charge of the business; that the state might exclude a foreign corporation altogether and therefore could prescribe that by doing business in the state a foreign corporation consented to be bound by the service on the agent, but that there was no analogy in such cases between suits against foreign corporations and suits against individual citizens of other states.

Foreign corporations may be wholly excluded from doing business within the state, or may be admitted upon such terms as the state sees fit to impose, among which may be expressly or by implication a condition that the corporation consent to the service of process in the manner prescribed by the state statute (Barrow Steamship Co. v. Kane, 170 U. S. 100, 42 L. Ed. 964; Pennsylvania F. Ins. Co. v. Gold Issue Co., 243 U. S. 93, 61 L. Ed. 610), provided, of course, that the service so prescribed be such as to give reasonable notice and opportunity to appear and be heard before default may be taken. Riverside & D. R. C.

Mills v. Menefee, 237 U. S. 189, 59 L. Ed. 910; Wuchter v. Pizzutti, 276 U. S. 13, 72 L. Ed. 446; Wildes v. Lou Dillon Mining Co., (Nev.) 170 Pac. 1046; King Tonopah Mining Co. v. Lynch, 232 Fed. 485.

But even a corporation may not as a condition to doing business in the state be required to surrender a right or privilege secured by the federal Constitution and laws. Southern Pacific Co. v. Denton, 146 U. S. 202, 36 L. Ed. 942; United States v. Chicago, M., St. P. & P. R. Co., 282 U. S. 311, 75 L. Ed. 359; Terral v. Burke Constr. Co., 257 U. S. 529, 66 L. Ed. 352; Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 54 L. Ed. 355.

A corporation can act only through agents. Service of process upon it must be made upon an agent, but it is essential to the validity of service of process within the state upon a foreign corporation in an action *in personam* that the corporation be within the state by transacting business there. Peoples Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 62 L. Ed. 587; Rosenberg & Co. v. Curtis-Brown Co., 260 U. S. 516, 67 L. Ed. 372; International Harvester Co. v. Kentucky, 234 U. S. 579, 58 L. Ed. 1479; St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 57 L. Ed. 486; Chipman v. Jeffery Co., 251 U. S. 373, 64 L. Ed. 314; Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 61 L. Ed. 710; Chase Bag Co. v. Munson Steamship Line, 295 Fed. 990; American Asphalt Roofing Corporation v. Shankland, 205 Iowa 862; Kalbach v. Service Station Co., 207 Iowa 1077, 1079.

If it transacts business in the state it is there as an artificial body. Id. It is not sufficient merely that one who occupies an office, or holds an agency for the corporation is personally within the state and there served. The corporation itself must be in the state transacting business there.

The Supreme Court of the United States has itself put the foregoing construction upon Flexner v. Farson.

In Hess v. Pawloski, 274 U. S. 352, 71 L. Ed. 1091, the statute involved was a motor vehicle law, which provided:

" 'The acceptance by a non-resident of the rights and privileges conferred by Section 3 or 4, as evidenced by his operating a motor vehicle thereunder, or the operation by a non-resident

of a motor vehicle on a public way in the commonwealth other than under said sections, shall be deemed equivalent to an appointment by such non-resident of the registrar or his successor in office, to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him, growing out of any accident or collision in which said non-resident may be involved while operating a motor vehicle on such a way, and said acceptance or operation shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served on him personally. * * *' "

The court said:

"The process of a court of one state cannot run into another and summon a party there domiciled to respond to proceedings against him. Notice sent outside the state to a nonresident is unavailing to give jurisdiction in an action against him personally for money recovery. Pennoyer v. Neff, 95 U. S. 714. There must be actual service within the state of notice upon him or upon some one authorized to accept service for him. Goldey v. Morning News, 156 U. S. 518. A personal judgment rendered against a nonresident who has neither been served with process nor appeared in the suit is without validity. McDonald v. Mabee, 243 U. S. 90. The mere transaction of business in a state by non-resident natural persons does not imply consent to be bound by the process of its courts. Flexner v. Farson, 248 U. S. 289. The power of a state to exclude foreign corporations, although not absolute but qualified, is the ground on which such an implication is supported as to them. Pennsylvania Fire Insurance Co. v. Gold Issue Mining Co., 243 U. S. 93, 96. But a state may not withhold from non-resident individuals the right of doing business therein. The privileges and immunities clause of the constitution, section 2, art. 4, safeguards to the citizens of one state the right 'to pass through, or to reside in any other state for purposes of trade, agriculture, professional pursuits, or otherwise.' And it prohibits state legislation discriminating against citizens of other states. Corfield v. Coryell, 4 Wash. C. C. 371, 381; Ward v. Maryland, 12 Wall. 418, 430; Paul v. Virginia, 8 Wall. 168, 180.

"Motor vehicles are dangerous machines; and, even when

skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways. The measure in question operates to require a non-resident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the non-resident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense.''

The opinion further holds that the statute makes no hostile discrimination against nonresidents. (None is made under our statute and the equal protection clause is not here involved.) The court then proceeds:

''The state's power to regulate the use of its highways extends to their use by non-residents as well as by residents. Hendrick v. Maryland, 235 U. S. 610, 622. And, in advance of the operation of a motor vehicle on its highway by a non-resident, the state may require him to appoint one of its officials as his agent on whom process may be served in proceedings growing out of such use. Kane v. New Jersey, 242 U. S. 160, 167. That case recognizes power of the state to exclude a non-resident until the formal appointment is made. And, having the power so to exclude, the state may declare that the use of the highway by the non-resident is the equivalent of the appointment of the registrar as agent on whom process may be served. * * * The difference between the formal and implied appointment is not substantial so far as concerns the application of due process clause of the Fourteenth Amendment.''

It seems to me that Hess v. Pawloski (274 U. S. 452), Hendrick v. Maryland (235 U. S. 610), Kane v. New Jersey (242 U. S. 160), hold that the state has the right to exact compensation for the use of the highways which it improves and maintains; that in the interest of safety and in execution of the

police power it has power to regulate the use of its highways by motor vehicles; that its regulations may include a requirement for taking out licenses; that it may make such regulations applicable to citizens of other states as well as to its own citizens; that it has power to exclude from the use of the highways citizens of other states as well as its own citizens unless and until they conform to such regulations; that as it may exclude citizens of other states from the use of its highways for motor vehicle traffic unless and until they comply with such regulations it may, in order to efficiently secure and facilitate enforcement and remedial action, require nonresidents to consent to the jurisdiction of its courts and to service of process upon a designated official as their agent in a manner calculated to give reasonable notice and opportunity to be heard in all actions growing out of the non-observance of such regulations or out of accidents occurring in the exercise of such privilege in use of its highways; that it may require express consent or provide that the acceptance of its hospitality or the voluntary use of its highways by nonresidents shall conclusively imply consent.

In such cases the state has the power to exclude until the appointment is made or consent given. It therefore has the right to declare the use of the highways equivalent to appointment.

But the state has no power to exclude individual citizens of other states from transacting business within the state, and no power to exact from them as condition to doing business in the state submission to the jurisdiction of the courts of the state when not found within it. In the enactment in 1851 of the law as now found in Section 11079, and in the continuance of that law on the statute book, the legislature, it seems to me, never had in view license laws such as that involved in the present case, enacted three-fourths of a century later. As will be presently shown, that law was and is merely a practice act, relating to all businesses. The legislature has not provided, either by that law or by any other, that the transaction of business in general or the sale of securities in particular within the state shall operate as an implied consent to the service of notice within the state ''on any agent or clerk employed in such office or agency * * *.'' The legislature has not provided that the sale of securities within the state by nonresidents shall operate as

consent to any form of service, not even to service upon the secretary of state. It has merely provided that one who seeks a license shall, as a prerequisite to obtaining it, file with the application consent to service on the secretary of state. Code Sections 8581-c9—8581-c11. I will recur to this subject later.

Plaintiff seeks to uphold the applicability of Section 11079 to nonresidents as an exercise of the police power. The statute in its original enactment is found in Chapter 101 (Section 1705) of the Code of 1851, entitled "The Place of Bringing Suit," which provides:

"When a corporation, company, or individual has an office or agency in any county for the transaction of business, any suits growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located as though the principal resided therein, and service on any agent or clerk employed in such office or agency shall be sufficient service upon the principal."

In the civil practice act of 1860 the section was divided into two parts, the first of which (Revision 1860, Section 2801, in Chapter 118, entitled "Place of Bringing Suit") is identical with Section 1705 to and including the words "where such office or agency is located." By Section 2827, which is in Chapter 120, entitled "The Manner of Commencing Actions," it is provided that:

"When a corporation, company, or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

These sections have been retained in the subsequent Codes under the same titles.

The statute originally was one regulating venue and authorizing in the particular case, and under particular circumstances, designated service on any agent or clerk employed in the designated office or agency. The statute applied, and still applies, to all businesses, and in its broad language, to all corporations, companies, or individuals transacting any business. It was

passed long before and without reference to the securities law or any police measure. The purpose of the statute neither as expressed or implied is to regulate the conduct of any business by nonresidents within the state, or to extend the jurisdiction of the state courts *in personam* to nonresidents not served in Iowa. By this statute the legislature has not undertaken, either by express language or by implication, to exclude any nonresident from doing business within the state or to prescribe the terms upon which he may transact business within the state. The statute does not purport to require nonresidents to appoint agents within the state to receive service of process. The statute in its original form, and as now found in component sections, is a practice act, regulating venue and method of service. It is not an enactment in execution of, nor has it ever been intended as an exercise of, the police power.

Nor can it be construed as enacting that the transaction of business within the state by an individual citizen of another state shall operate as submission to the jurisdiction of the courts of the state by service "on any agent or clerk employed" in his office or agency within the State. As is said in Hess v. Pawloski, 274 U. S. 352, 355:

"The mere transaction of business in a state by non-resident natural persons does not imply consent to be bound by the process of its courts."

Moreover, the agency of one upon whom service is made must be such as to render it fairly reasonable and just to imply an authority on the part of the agent to receive service. Conn. Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 617, 43 L. Ed. 569, 574; Commercial Mut. Acc. Co. v. Davis, 213 U. S. 245, 255, 53 L. Ed. 782, 787; Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 61 L. Ed. 710.

The agent must be one who may fairly be presumed to have the duty of communicating to his principal the fact of service. St. Clair v. Cox, 27 L. Ed. 222; King Tonopah Min. Co. v. Lynch, 232 Fed. 485, 496; Strain v. Portrait Co., 126 Fed. 831.

While the last two lists of cases involved foreign corporations the requirements with respect to service therein made are requirements of due process and must be as applicable to non-resident individuals as to foreign corporations. It is the "char-

acter and power of the one served as an agent" that is the "test of the right to acquire jurisdiction." Riverside & D. R. C. Mills v. Menefee, 237 U. S. 189, 59 L. Ed. 910-913.

There is no requirement in Section 11079 that the person served, or anyone else, transmit the notice to the principal, or that the service be upon one who possesses any authority or is under any duty with respect to the receipt or service or the transmission of the notice to the principal. It is not even required that the agent or clerk be one employed in the particular transaction. There is no requirement from which it may be deduced that the service must be such as is likely to come to the attention of the principal. A number of insurance companies, for instance, might employ a common agency having many clerks. It matters not how limited the duties and employment of the clerk may be, or how unlikely for various reasons service upon him would be brought to the knowledge of the principal, still by the statute service of notice upon him would require the principal to appear and defend. It is essential to the validity of the statute providing for judgment *in personam* on substituted or constructive service that it make such provision for the probable communication of actual notice to defendant as reasonably to enable him to appear and be heard before he may be defaulted. Wuchter v. Pizzutti, 276 U. S. 13, 72 L. Ed. 446; Blackmer v. United States, 284 U. S. 421; Wildes v. Lou Dillon Mining Co., (Nev.) 170 Pac. 1046; King Tonopah Min. Co. v. Lynch, 232 Fed. 485.

This action is in a municipal court. The service was within the county. By Section 10668 the defendant may be required to appear and answer in five days. (In the district court appearance may be required after ten days.) Section 11059.

Though the clerk may be wholly without duty or authority in the matter his delay or inattention, especially in the case of a principal residing at a long distance from the state, might very easily result in default's being taken before the principal has any knowledge of the action. The statute must prescribe reasonable time, taking into consideration the possibility of accidental delays. Roller v. Holly, 176 U. S. 398, 44 L. Ed. 520.

It is not sufficient that in the exercise of discretion reasonable time may be given or that default judgment may be set aside for insufficient notice. Roller v. Holly, 176 U. S. 398.

The constitutional validity of a law is to be tested not by what has been done under it but what may by its authority (rightfully) be done. Stuart v. Palmer, 74 N. Y. 183, 188; Montana Co. v. St. Louis Mining & Milling Co., 152 U. S. 160; Wuchter v. Pizzutti, 276 U. S. 13, 24, 72 L. Ed. 446; Burtch v. Zeuch, 200 Iowa 49, 55; Boise-Payette Lumber Co. v. Challis Independent Dist. (Idaho) 268 Pac. 26; 6 R. C. L. 82; 12 C. J. 786, 1228.

It seems to me that Section 11079 if applied to individual citizens of other states exercising their constitutional right to transact lawful business within the state would be unconstitutional under the uniform decisions of the courts. Cabanne v. Graf, 92 N. W. 461, 59 L. R. A. 735; Caldwell v. Armour, (Del.) 43 Atl. 517; Moredock v. Kirby, 118 Fed. 180. And that since Flexner v. Farson was decided the interpretation which I have given to it has been uniformly placed upon it by the courts. Andrews Bros. v. McClanahan, 295 S. W. (Ky.) 457; Knox Brothers v. E. W. Wagner & Co., 209 S. W. (Tenn.) 638. See further also Joel v. Bennett, (Ill.) 115 N. E. 5, 6; Frölich v. Hanson, (Tenn.) 296 S. W. 353; Aikmann v. Sanderson, (La.) 47 So. 600.

In Murphy v. Development Co., 169 Iowa 542, the constitutionality of the statute as there applied to an individual nonresident was not considered. It seems to me, therefore, that case in this regard should be overruled. While in Thornburg v. James E. Bennett & Co., 206 Iowa 1187, we said that Section 11079 was not discriminatory, we expressly withheld from discussion or adjudication the question now under consideration.

To avoid misapprehension I may add that the object of this suit is not to determine the rights of or to subject property within the state, or to determine the status of citizens of the state. The action is exclusively *in personam*. I may also say that inasmuch as we have held that a partnership for purposes of venue (Fitzgerald v. Grimmell, 64 Iowa 261), and for purpose of attachment (Ruthven v. Beckwith, 84 Iowa 715; Brumwell & Co. v. Stebbins, 83 Iowa 425), and for purpose of judgment (Lansing v. Bever Land Co., 158 Iowa 693), as well as for other purposes (Lutz v. Billick, 172 Iowa 543; Jensen v. Wiersma, 185 Iowa 551; National Sewer Pipe Co. v. Smith-Jaycox Co., 183 Iowa 17; Thornburg v. James E. Bennett & Co.,

206 Iowa 1187), is a legal entity, distinct from its individual members, I do not wish to be understood as expressing any opinion upon the validity as to a partnership of the statute under consideration.

If it is suggested that the constitutional right of a citizen of one state to transact business in another state is limited to the transaction of lawful business it is to be said that the defendant does not admit, nor does the evidence show, that the plaintiff was engaged in the transaction of an unlawful business. It may be admitted that the securities law is a proper enactment in the exercise of the police power. Merrick v. N. W. Halsey & Co., 242 U. S. 568, 61 L. Ed. 498. Plaintiff's showing at most is that defendant's license was not in effect at the time of the alleged sale to plaintiff. See State v. Gish, 168 Iowa 70. It is the substance of plaintiff's alleged cause of action that defendant was not licensed at the time of the sale in question and that therefore the sale was in violation of the statute. This is the very matter upon which the defendant is entitled to be heard. He may be condemned on that allegation only if the court has jurisdiction of his person. To hold that the business transacted by defendant within the state was unlawful, and because it was unlawful he was not, in making the sale in controversy (if it was made, which is still to be decided), ''entitled to all privileges and immunities of citizens of the several states,'' is to hold in advance of hearing that plaintiff has a cause of action against defendant for transacting an unlawful business and that the court has jurisdiction because the plaintiff has such cause of action,—that is, the court has jurisdiction because plaintiff pleads a good cause of action for sale of property or conducting business within the state in violation of law.

Inasmuch as the majority contends nothing for the service upon the Secretary of State it is necessary to add but little to what has been said with reference to that service. Plaintiff's position necessarily is that the application for permit and consent to service of process and the permit granted upon them after the sale did not relate back to the sale and do not protect defendant in making the sale. See 37 C. J. 244; State v. Gish, 168 Iowa 70.

Plaintiff at this point is in the position of seeking to take advantage of what the defendant had done so far as it is to

plaintiff's advantage in this action but denying its efficacy so far as it would protect defendant in making the sale. Plaintiff contends that defendant's consent to service of process is not "limited to causes of action arising subsequent to the appointment of the Secretary of State as his agent on whom notice of suit can be served. The language of the statute is broad and sweeping, and not only contemplates causes of action arising subsequent to the time the licensee complied with the law, but also contemplates causes of action arising subsequent to the time the licensee should have complied with the law."

Defendant's signature to the consent was affixed not as a final and unconditional execution of it but as a part of the process of procuring permit. The deposit of the consent with the Secretary of State was tentative, and impliedly conditional on the issuance of permit. The consent was not general or unlimited; it was not to service on the Secretary of State in any action or any cause; but was limited to actions "growing out of the violation of any provision" of the securities law. Neither the state nor defendant contemplated by this consent the violation of the law by selling securities before permit issued or the institution of suits founded on sales without the permit which was being applied for. The consent was not intended by either the state or defendant to become effective unless and until it was accepted and the defendant was permitted to sell securities under it. The terms of the application and consent had reference to the anticipated issuance of permit and to compliance with the permit. Plaintiff does not claim to have relied upon, or to have been misled by, the proceedings preliminary to the granting of the permit, but on the contrary is asserting, by implication at least, that such preliminary proceedings are, as to his right to recover, of no effect. If they were of no effect for the purpose for which they were intended,—namely, the securing to defendant of right to make the sale,—they are of no effect for a purpose for which they were not intended, the plaintiff's alleged right of action founded on their failure to effect that purpose. Plaintiff in denying the efficacy of the consent at the time of its execution, and denying the retroactive operation of the permit, precludes himself from asserting the efficacy of the consent as an invitation to secure jurisdiction by service in accordance with

it. Plaintiff's claim to estoppel based upon the alleged execution of the consent is unfounded.

Plaintiff relies on Wait v. Morrison, 281 Pac. (Kan.) 906, which was an action against a foreign corporation for damages sustained from a collision with defendant's automobile. The statute of Kansas required foreign corporations seeking to do business in the state to make application for authority, accompanied with "written consent of the corporation, irrevocable, that actions may be commenced against it in the proper court of any county in this State in which a cause of action may arise or in which the plaintiff may reside * * *." The court said:

"The statute is broad enough to cover any action, whether the right to prosecute it had accrued before or after the defendant had complied with section 17-501. An action on a promissory note, due before consent to service was given and held by a citizen of this state, ought to be maintained under that statute. The statute is broad enough to embrace such an action."

That was the case of a foreign corporation asking for authority to do business in the state and required by statute as a prerequisite to the granting of the consent that service in any action against the corporation for whatever cause be filed. Plaintiff there was not, as he is here, denying the authority of defendant to transact business in the state as the very basis of his action.

It therefore seems to me that in the rendition of the judgment asked the court would attempt to exercise jurisdiction over a citizen of another state not found in this state and not consenting to the jurisdiction of the courts of this state, on substituted service based upon an interpretation of a statute which under the federal statute would render the statute void, or on service based on a consent not given or accepted as applicable to actions of this character. I think the order should be reversed.

WAGNER, C. J., and KINDIG and GRIMM, JJ., concur in this dissent.