**John P. ELLIOTT, Jr., Plaintiff,**

v.

**W. M. Ross CABEEN, d/b/a W. M. Ross Cabeen and Associates, Defendant.**

**Civ. A. No. 7919.**

United States District Court
D. Colorado.

Nov. 8, 1963.

Winner, Berge & Martin, Warren O. Martin, Denver, Colo., for plaintiff.

Heyer & Cullen, Richard P. Cullen, Denver, Colo., for defendant.

ARRAJ, Chief Judge.

This matter is before the Court on defendant's Motion to Dismiss or, in lieu thereof, to set aside service of process on the grounds that defendant, as a resident of the State of California, is not subject to service of process within the District of Colorado and that he has not been properly served with process in this action. The additional grounds urged by defendant need not be considered here in view of the disposition we make of this case.

Suit is based on an alleged oral contract by virtue of which plaintiff agreed to work as a land man for defendant. Plaintiff is a citizen of Colorado, and defendant, a citizen of California; the requisite jurisdictional amount is alleged.

Service of process was first made on one Ann Chalk, who, plaintiff's affidavit states, is a receptionist in the Denver offices of defendant. After defendant moved to dismiss the action or to set aside service on the grounds that it did not constitute proper service on defendant, plaintiff obtained an alias summons which was served on one Julia Hoss, who,

plaintiff's affidavit states, is the secretary of the Land Department of plaintiff and in that capacity acts as stenographer for defendant. Defendant again moved to dismiss the action or, in lieu thereof, to set aside the alias service of process on grounds identical to those set out in its first motion. Defendant also filed affidavits controverting the status of Miss Chalk and Miss Hoss.[1]

Defendant's motions are in essence predicated on the basis that neither of the two parties served are proper parties for purposes of substituted service so as to subject defendant to the jurisdiction of this Court. Plaintiff, on the other hand, contends that the service was proper, relying on Rule 4(d) of the Federal Rules of Civil Procedure which provides for service upon individuals "in the manner prescribed by the law of the state in which the district court is held."[2] In plaintiff's view the applicable Colorado law is Rule 4(e) of the Colorado Rules of Civil Procedure, the pertinent portion of which is set out below:

"e. Personal Service in State. Personal service within the state shall be as follows:

"(1) Upon a natural person over the age of 18 years, by delivering a copy thereof to him, or by leaving a copy at his usual place of abode, with some member of his family over the age of 18 years, or at his usual place of business, with his stenographer, bookkeeper, or chief clerk; or by delivering a copy to an agent authorized by appointment or by law to receive service of process."

He argues that the facts of this case fit the rule inasmuch as his affidavit proves that defendant's usual place of business is in Colorado, that Martin v. District Court, 375 P.2d 105 (Colo.1962) holds that the position of secretary is synonymous with stenographer for purposes of Rule 4(e) (1), and that therefore service upon Julia Hoss, allegedly a "secretary of defendant" constituted proper service upon defendant under the rule. Defendant controverts these arguments.

In our view of this case, we deem it unnecessary to resolve the points in controversy as set out above, for we find plaintiff's arguments based on an assumption we are unable to accept. That assumption is set out in his memorandum brief as follows: "There can be no question that under the Colorado Rule 4, service can be made on a non-resident individual as well as a resident individual at

---

1. Miss Chalk's affidavit, offered by defendant in support of his motion, alleges that she is employed as a receptionist by Cabeen Exploration Corporation and is not in the employ of Wm. Ross Cabeen in any capacity whatsoever and is not authorized to receive process for Wm. Ross Cabeen. Plaintiff's affidavit, on the other hand, alleges that Miss Chalk is the receptionist in the offices of defendant, which are shared with Cabeen Exploration Corporation, and that she acts as receptionist for both defendant and the said Corporation, answers the telephone for defendant, receives defendant's mail, and does some typing for defendant.

The affidavit of Miss Hoss states that she is employed as a land secretary by Cabeen Exploration Corporation and also serves as a "part-time employee of Wm. Ross Cabeen & Associates in the capacity of a land secretary for which services she receives the approximate sum of $106.25 per month" and "that she is not in the employ of Wm. Ross Cabeen as stenographer, bookkeeper or chief clerk or in any capacity whatsoever, except as above set forth, nor is she authorized by appointment or by law to receive service of process for Wm. Ross Cabeen." Plaintiff's affidavit in opposition contends that Julia Hoss is the secretary of the land department of defendant and that "as such secretary she acts as stenographer for the defendant as required in the land department, taking dictation, typing letters, preparing rental lists and setting up land department files."

2. The Court notes that this section of the Rules was amended in 1963 by the substitution of the words "district court is held" for the words "service is made." The amendment is immaterial insofar as this litigation is concerned, it being made for purposes of clarifying the reference to state law. See 2 Moore, Federal Practice at 9 (Special Supplement, 1963).

his usual place of business." He cites no authority for this general proposition, and we can find none. The issue appears to us to be one of first impression in this jurisdiction,[3] and since we find it one of some significance, a somewhat extensive treatment of it seems desirable. The difficulty involved in this quite basic, almost elementary, question is perhaps indicated by the fact that neither plaintiff nor defendant has touched it directly in their briefs.

At the outset we note that the subject of the in personam jurisdiction of the courts, with which we are concerned here, has been immensely broadened within recent years. Even a cursory examination of the clear evolution that ranges from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878) through International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) to McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (to name only the most important of the landmark cases on the subject) reveals the broad "new enclave"[4] opened to the courts in this area. This development, as might be expected, has given rise to an abundance of commentary and legislation,[5] and the Reporter

Systems are so replete with cases on the subject that any attempt to enumerate them in a wholesale fashion seems fruitless. Faced with such an embarrassing array of riches in the form of recent authorities, we consider it appropriate to begin with basic principles before assessing them.

One of the most elementary of legal principles is that a basis of jurisdiction must exist before a court has competence to act.[6] Two tests are applied in determining whether a basis exists. The first is the inquiry whether legislative jurisdiction exists—does the state have power to declare that its courts have jurisdiction over a particular subject matter? The second is whether judicial jurisdiction exists, a determination made on the basis of a twofold test: (1) Assuming that legislative jurisdiction exists, has the state *exercised* it by providing the courts with a method for acquiring jurisdiction? (2) If a method has been so provided, are there sufficient jurisdictional facts to satisfy the requirements of the method provided?[7]

In our view, the decisive question in this case is whether the State of Colorado has exercised the legislative jurisdiction which we assume, *arguendo*, it has,

---

3. It has not, however, gone unnoticed in the Law Reviews. See Galland, The Trend—Substituted Service on Nonresidents Doing Business Within a State, 8 Rocky Mt.L.Rev. 54 (1935); Storke, Another Decade of Colorado Conflicts, 33 Rocky Mt.L.Rev. 139 (1961).

4. The phrase is that of Judge Learned Hand who used it in assessing the effects of International Shoe in Bomze v. Nardis Sportswear, 165 F.2d 33, 36 (2d Cir. 1948).

5. Among the more recent articles on the subject, we call attention to the following: Note, A Reconsideration of "Long-Arm" Jurisdiction, 37 Ind.L.J. 333 (1962); Campbell, Jurisdiction Over Nonresident Individuals and Foreign Corporations: the Privileges and Immunities Clause, 36 Tul.L.Rev. 663 (1962); Developments in the Law—State Court Jurisdiction, 73 Harv.L.Rev. 909 (1960); Reese and Galston, Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L.Rev. 249

(1959); Ehrenschweig, Pennoyer is Dead—Long Live Pennoyer, 30 Rocky Mt.L. Rev. 285 (1958); Kurland, The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts—From Pennoyer to Denckla: A Review, 25 U.Chi.L.Rev. 569 (1958); Note, 31 Rocky Mt.L.Rev. 115 (1958); and Annotations found in 91 A.L.R. 1327, 10 A.L.R.2d 200 and 78 A.L.R.2d 397.

Among the older articles on the subject, we have found the following most helpful: Culp, Process in Actions Against Non-Residents Doing Business Within a State, 32 Mich.L.Rev. 909 (1934) and Scott, Jurisdiction over Nonresidents Doing Business within a State, 32 Harv. L.Rev. 871 (1919).

6. See Restatement (Second), Conflict of Laws, Introductory Note to Chapter 3 and Section 42 at pp. 1–8 (Tent.Draft No. 3, 1956).

7. See Restatement (Second), Conflict of Laws, Chapters 3–4 (Tent.Draft No. 3, 1956).

to subject a non-resident natural person doing business in Colorado to the in personam jurisdiction of the Court by means of substituted service of process. Plaintiff, on the one hand, assumes that Colorado has provided a means of substituted service over such an individual and argues that defendant's contacts with Colorado are substantial enough to subject him to state jurisdiction without offending due process.[8] Defendant, on the other hand, contends that his allegedly minimum contacts with the state are not enough to sustain jurisdiction and that it would be fundamentally unfair, in any event, for Colorado to provide for substituted service on such an individual as is involved here.[9] Neither party has

phrased his contentions in terms of the issue which we consider decisive. As argued, the issues raised by the parties take on both a constitutional and a non-constitutional flavor. On the one hand, they rest in the sphere of legislative jurisdiction which is concerned with the "permissible range of application of the law * * * [and] largely falls within the area of constitutional law," [10] while on the other hand they are concerned with the question of whether sufficient jurisdictional facts exist to satisfy the requirement of the method of service which the state has provided. Both parties overlook the question whether the state has in fact provided such a method of substituted service, and thus the ques-

8. Plaintiff has succinctly phrased the question as he sees it in a single sentence: "* * * the question is reduced to whether defendant had sufficient contacts with Colorado to subject him to jurisdiction of the Colorado Courts."

9. The gist of defendant's argument on this point is contained in the following paragraph from his brief:

"What must be considered is the element of fairness. It is not fair to defendant to subject him to a personal judgment on the basis of having a usual place of business in Colorado in a situation where it clearly appears that his only contact with the state is by reason on having a part-time employee engaged in clerical matters and record keeping upon whom service was attempted."

Defendant also urges this Court to follow Western Mut. Fire Ins. Co. v. Lamson Bros. & Co., 42 F.Supp. 1007 (S.D. Iowa, 1941), arguing that the statute construed there is "similar to the Colorado rule authorizing substituted service on the basis of doing business in the state." We must disagree with this phase of defendant's argument. We find the Iowa statute construed there materially different from the Colorado Rule. The statute, Section 11079 of the Code of Iowa 1939, reads as follows:

"Actions arising out of agency. When a corporation, company, or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing

out of or connected with the business of that office or agency."

As a matter of fact, in our view it is precisely because Colorado does not have a statute similar to this that plaintiff's action here may not succeed. Moreover, we think the quotation urged on us by defendants from this Iowa case is wholly without support from any modern authority. The quotation is:

"For this reason a State, other than that in which he is a citizen, may not burden this right to do business in other States by making him amenable by substituted service to process under the laws of such other States on the grounds that the privilege of doing business in such other States carries with it an obligation to be amenable to the courts of the State in which he is so doing business." Western Mut. Fire Ins. Co. v. Lamson Bros. & Co., supra [42 F.Supp. 1007] at 1012.

The Iowa Court cites in support of this proposition the United States Supreme Court case of Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L. Ed. 1097 (1935) which, in our view, held contra to the proposition which is urged on us here, interpreting the identical section of the Iowa Code quoted above. This policy is, furthermore, directly contra to the more modern decisions on jurisdiction, such as International Shoe and McGee which we have cited above. A more complete discussion on this point is made below in the text of the opinion.

10. Restatement (Second). Conflict of Laws, Introductory Note to Topic 3 at (Tent.Draft No. 3, 1956).

tions they dispute are not really at issue here.[11]

The apparent fundamental misunderstanding of the nature of the issue that is presented here is by no means unique. It has risen in other jurisdictions. For example, in Elliott v. United States Steel Export Co., 186 F.Supp. 57 (E.D.Pa. 1960), the plaintiff argued with much force against the defendant's motion to dismiss for lack of personal jurisdiction over it, contending that by virtue of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) defendant's contacts with the State of Pennsylvania were sufficient to sustain personal jurisdiction. Judge Goodrich defined the issue for the parties as follows at 186 F.Supp. 58–59:

"In arguing against the motion, the plaintiff has devoted considerable

attention to a discussion of the Supreme Court's opinion in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. This discussion is completely irrelevant and would be passed over without comment except for the fact that here, as well as in other cases, there seems to be some misunderstanding about the significance of that decision. In International Shoe the Supreme Court was considering constitutional limitations upon how far a state may go in providing for personal jurisdiction of its courts over foreign corporations. But all such discussion becomes relevant only when the state has gone so far as to raise the problem. Developments leading up to the International Shoe case and since

11. The authorities relied on by plaintiff, for example, relate either to the question of legislative jurisdiction or to the question whether sufficient jurisdictional facts were alleged to satisfy the requirements of the method of service which plaintiff erroneously assumes had been provided by the state. Thus plaintiff cites Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, and the annotation in 91 A.L.R. 1327 for his assertion that there can be no argument about the constitutionality of substituted service on a non-resident individual. Pawloski was one of the landmark cases upholding the constitutionality of statutes providing for substituted service on non-resident motorists, jurisdiction being based on the act of the motorists driving in the state. The subject of the A.L.R. Annotation he cites is "Power of state to provide for service, other than personal, of process upon nonresident individual doing business within the state so as to subject him to judgment in personam." (emphasis supplied). It seems apparent that both of these authorities, dealing as they do with what is constitutionally permissible, relate to the question of legislative jurisdiction. The other authorities chiefly relied on by plaintiff are Super Products Corp. v. Parkin, 20 F.R.D. 377 (S.D.N.Y. 1957) and the Annotation in 10 A.L.R.2d 200. The Parkin case dealt with the quantum of contacts necessary for a state court to sustain jurisdiction over a nonresident doing business within the state, while the subject of the cited Annotation is "What amounts to doing business in a state *within statute* providing for service of process in action against nonresident natural person or persons doing business in state." The essential distinguishing characteristic of Parkin from the instant case is that the relevant state law in that case provided by statute for substituted service on a non-resident natural person doing business within the state. The title of the Annotation speaks for itself. Clearly both authorities are directed to the question whether the requirements of methods of service *provided by a state by statute* were satisfied.

Defendant essentially argues the same two questions. He cites Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878) for his assertion that "without personal service a personal judgment lacks due process of law,"—again a question of what is constitutionally permissible. (It is also relevant to note that the effect of Pennoyer v. Neff, as noted in the text of this opinion, has been substantially altered by subsequent decisions of the U.S. Supreme Court.) Defendant's second argument boils down to his assertion that it would not be fair to subject this defendant to the jurisdiction of the Court on the basis of his allegedly minimum contacts with Colorado. See footnote 9 supra. This contention partakes of the flavor both of the questions of legislative jurisdiction and whether the requirements for substituted service provided by state statute have been satisfied.

that decision are highly interesting and a favorite subject of discussion by law review writers, but they are of no help in determining the question before this Court. 'Because a state may exercise jurisdiction it does not follow that it does do so, much less that it must.' Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, 542. \* \* \* The question for the Court here is not how far Pennsylvania may constitutionally go in exercising judicial jurisdiction over a foreign corporation but how far the legislature had taken it as of the time the complaint in this case was filed."

Judge Goodrich in an earlier opinion phrased the same question in a little different way:

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of

the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such an attempt violates the due process clause or the interstate commerce clause of the federal constitution. Const. art. 1., § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation." [12]

To paraphrase Judge Goodrich, the nub of our question is whether Colorado has provided for bringing a non-resident individual into its courts under the circumstances of the case presented.

---

12. Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1st Cir. 1948). See also Bomze v. Nardis Sportswear, 165 F.2d 33, 35 (2d Cir. 1948) (per Judge Learned Hand):
"\* \* \* the first question is whether the service was valid under the New York decisions. If we conclude that it was not, of course the case ends; but, if we conclude that it was, there arises the second question: i. e. whether the service was valid under the Constitution. This approach is the proper one, because the law of New York may not extend to suitors' access to its courts against foreign corporations as amply as it has power to do under the Constitution."
Partin v. Michaels Art Bronze Co., 202 F.2d 541, 542–544 (3rd Cir. 1953) (per Judge Goodrich):
"Because a state may exercise jurisdiction it does not follow that it does do so, much less that it must. \* \* \* So the first question which comes up in a case like the one at issue is whether the State, here Pennsylvania, has, through legislation plus the judicial application thereof, asserted jurisdiction over the defendant. \* \* \* We do not, therefore, get to the question of

how far Pennsylvania could go if it cared to exercise all the power it constitutionally had."
Stanga v. McCormick Shipping Corp., 268 F.2d 544, 548 (5th Cir. 1959) (per Judge Brown):
"In determining the sufficiency and validity of service of process on a foreign corporation under laws of the forum state, the problem divides itself along lines of state and national interest. The first part is to ascertain whether the state law means to encompass the challenged service. This question—at least as to diversity cases which this one is—is wholly a matter of state law. [Citations omitted] The second is conditioned on an affirmative answer to the first, and then presents the problem whether the state law as thus applied offends the Federal Constitution."
and Singleton v. Atlantic Coast Line Railroad Co., 20 F.R.D. 15 at p. 19 (E.D. Mich.1956) in which the Court points out:
"the distinction between the question of whether a foreign corporation is subject to service and the question of whether such service is in violation of the due process clause of the federal Constitution."

56

Implicit, if not explicit, in Judge Goodrich's analysis is the notion, with which we agree, that a statute is necessary to provide the basis of jurisdiction which is in dispute here—doing business in a state by a non-resident individual. This conclusion rests on an assumption that such a basis of jurisdiction was unknown to the common law, an assumption we find well grounded in the authorities.

One of the most illuminating sources of information on this point is the Restatement of Conflicts. The original edition, published in 1934, did not contain a section which expressly referred to jurisdiction over a non-resident individual doing business within a state. However, in the 1948 Supplement, a new Section Heading for Section 85 [13] entitled "Jurisdiction Over One Who Carries on Business in a State" was adopted, and Section 22 of the Restatement of Judgments (1942), which carried the same heading, was incorporated *in toto*. The Special Note explaining the incorporation indicates that the decision of the United States Supreme Court in Doherty v. Goodman, 294 U.S. 623, 55 S.Ct. 553,

79 L.Ed. 1097 (1935), which was rendered in the interval between the publishing of the original Restatement of Conflicts and the Restatement of Judgments, opened the way for the Institute to take a position on the subject.[14] The significance of the Doherty case, for our purposes here, is that it involved the construction of a *statute* which made non-resident individuals subject to service on the basis of doing business within the jurisdiction.[15] On the basis of that case, the new Section,[16] by making explicit reference to a statute, implied that such a statute was a necessary prerequisite, Comment (a) pointing out that doing business was not a basis for obtaining jurisdiction at common law.[17] This Section has been recently amended by the Institute,[18] and a new Comment (d) in the Tentative Draft of the Restatement (Second) of Conflicts makes explicit what was implied in the Comment to the earlier edition. The New Comment, which is directly in point here, is as follows:

"d. *Necessity for statute*. The courts did not use the doing of busi-

13. The original heading of Section 85 was "Effect of Constitutional limitations in United States," Restatement, Conflict of Laws, Section 85 (1934) and Restatement, Conflict of Laws, Section 85 (1948 Supp.).

14. The Special Note to the Restatement, Conflict of Laws, Section 85 at p. 101 (Supp.1948) refers to the Special Note to the Restatement, Judgments, Section 22 at p. 103 (1942).

15. See footnote 9 supra for the citation of the statute and limited discussion thereof. It should be noted that though the statute does not make explicit reference to non-residents, the Court's interpretation of "individual * * * in any county other than that in which the principal resides" leads to that result.

16. "Jurisdiction Over One Who Carries on Business in a State.
"A court by proper service of process may acquire jurisdiction over an individual not domiciled within the state who carries on a business in the state, as to causes of action arising out of the business done in the state, *if a statute of the state so provides* at the time

when the cause of action arises." (emphasis added). Restatement, Judgments Section 22 (1942).

17. "a. *Doing Business as a basis of jurisdiction.* At common law there was no method of obtaining jurisdiction over a non-resident doing business in a state unless he could be found within the State and there personally served with process, or unless he consented to the exercise of jurisdiction over him. If he carried on business in the State through agents and was not personally within the State, an action could not be maintained in the State against him without his consent, even though the cause of action arose out of the business." Restatement, Judgments Section 22, Comment a. at 103 (1942).

18. It now reads: "Doing Business in State. A state has judicial jurisdiction over an individual who carries on business in the state within limitations of reasonableness appropriate to the relationship derived from such business." Restatement (Second), Conflict of Laws, Section 85 (Tentative Draft No. 3 April 19, 1956).

ness as a basis of judicial jurisdiction at common law. Unless authorized by statute, a court will be deemed to lack power to assume jurisdiction on such a basis. It is essential that the statute be in existence at the time when the cause of action arises. A contrary rule would be unfair to the defendant; he should be able to know beforehand whether his doing of business will be considered grounds by the state for the exercise of judicial jurisdiction over him.

"The statute must be interpreted to determine the causes of action to which it applies and especially whether it includes causes of action not arising out of the business done in the state." [19]

Our examination of other authorities leads us to the same conclusion. A few quotations should suffice to illustrate:

"Physical presence, appearance, consent and incorporation within the jurisdiction were the exclusive common-law bases of in personam jurisdiction. Express statutory authorization is needed as a practical matter, before a court will assume jurisdiction under more modern jurisdictional bases such as 'ownership of property,' 'doing an isolated act,' or even older bases, such as 'doing business', domicile, or nationality." [20]

One of the ALR Annotations called to our attention by plaintiff lends further support:

"Although personal service of process is, as a general rule, an absolute prerequisite to a court's jurisdiction over the person of a nonresident defendant, *statutory enactments have made such jurisdiction possible* in certain specified cases where personal service cannot be achieved." (Emphasis added) [21]

A second ALR Annotation contains language much in the same vein:

"Attention is called to the fact that, assuming that the question of power is answered in the affirmative, *a court may yet be precluded from acquiring jurisdiction* to render a personal judgment against the nonresident on grounds not discussed in the present annotation, for instance, *because statutory authority to exercise such jurisdiction or for service of process is lacking,* or because the state has failed to adopt a reasonable method of notification." (Emphasis added) [22]

█ Having concluded that a statute is necessary to enable Colorado to assume in personam jurisdiction over an absent non-resident natural person doing business in the state by means of substituted service of process, our next obvious step is to determine whether any such statutory authority exists in Colorado. Putting aside for the moment plaintiff's assumption that this authority resides in Colorado Rule 4(e) (1), a brief look at Colorado commentaries on the subject provides some assistance. Two articles from the Rocky Mountain Law Review, written some 25 years apart, are in point.

The first article, which appeared in 1935 shortly after the decision of the United States Supreme Court in Doherty v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935) and which was undoubtedly inspired by it, was written by the late Benjamin S. Galland, then Assistant Professor of Law at the University of Colorado. The short article was entitled "Substituted Service on Nonresidents Doing Business Within a State." Its conclusion carries some significance to our inquiry:

"Colorado is among the states which has no such statute providing for

**19.** Restatement (Second), Conflict of Laws, Section 22 at 103 (Tentative Draft No. 3 April 19, 1956).

**20.** Note, Jurisdiction Expanded—The Illinois Civil Practice Act, 44 Iowa L.Rev. 361, 365 (1959). See also Reese and

Galston, Doing An Act or Causing Consequences As Bases of Judicial Jurisdiction, 44 Iowa L.Rev. 249 (1959).

**21.** Annot., 10 A.L.R.2d 200 (1950).

**22.** Annot., 78 A.L.R.2d 397, 398–99 (1961).

substituted service. In view of the holding in the Goodman Case, the adoption of such provision as contained in Section 11079 might well be considered, as it surely would be an added security to residents of a state dealing with non-residents." [23]

The second article was written in 1961 by Professor of Law Emeritus Frederic P. Storke, also of the University of Colorado. His article, "Another Decade of Colorado Conflicts," contains the following terse observation:

"The most important aspect of personal jurisdiction in Colorado is a negative one—the failure of the Colorado legislature to extend the power of its courts along the lines indicated by recent decisions of the United States Supreme Court. The recent Illinois statute is suggested as a model for possible adoption in this state." [24]

Plaintiff has not pointed out to us, nor have we found in our own research, any statute which purports to cure the defects highlighted by Professors Galland and Storke. Moreover, we do not think—nor does plaintiff contend—that the Colorado statutes which provide for substituted service on nonresident motorists [25] and foreign corporations [26] can properly be interpreted to cover the case at bar.

■ On the basis of our prior somewhat lengthy discussion, we feel it is not necessary to discuss in detail the inapplicability of Colorado Rule 4(e) (1) to this case. Suffice it to say that we do not find that it even purports to encompass the basis of jurisdiction with which we are concerned here.[27] In 1935, Professor Galland, in discussing the provisions of the Colorado Code which pro-

vided for service of process on a clerk or bookkeeper at the usual place of a defendant's business and upon an agent of a foreign corporation—provisions which seem to us the forerunner of Rule 4(e) (1)—specifically noted that:

"These provisions have never been construed as permitting substituted service on nonresident individuals or unincorporated associations or stock companies as far as the writer could discover, nor has he found any case in which such contention was made. In view of the fact that jurisdiction over nonresident individuals by substituted service seems dependent on statutes specifically applying to such nonresident individuals it is considered that the last mentioned sections do not purport to govern such cases." [28]

The state of the law on this subject as described by Professor Galland does not appear to us to have been materially changed in the intervening years.

Since we consider the problem with which we are here concerned to be of some importance, a few additional comments would seem appropriate. First, we may say in passing that the plight of plaintiff here is not without parallel in other states. An exhaustive study of recent developments relating to jurisdiction of the courts undertaken by the Harvard Law Review contains the following observation:

"The Supreme Court decisions in International Shoe Co. v. Washington, by redefining the constitutional limitations on state jurisdiction, opened a new enclave of power within which the states may legitimately operate. Yet, as has been seen, the

---

23. 8 Rocky Mt.L.Rev. 54, 57–58 (1935). See footnote 9 supra for a brief discussion of the Goodman case and the citation of the applicable Iowa statute.

24. 33 Rocky Mt.L.Rev. 139 (1961).

25. CRS 13–8–2 (Supp.1960) and CRS 1953 13–8–3.

26. CRS 31–35–19 (Supp.1960).

27. Thus we need not concern ourselves with the question whether this basis of jurisdiction could be provided by a Rule promulgated by the Colorado Supreme Court as opposed to the passage of a statute by the Colorado legislature.

28. Galland, The Trend, Substituted Service on Nonresidents Doing Business Within a State, 8 Rocky Mt.L.Rev. 54, footnote 28 at 58 (1935).

state legislatures have generally not taken advantage of the available opportunities."[29]

Secondly, we point out that the policy implicit in plaintiff's contentions is highly persuasive in the light of modern commercial transactions. The United States Supreme Court in Doherty v. Goodman, supra, cited with approval a quotation from Davidson v. Doherty, 214 Iowa 739, 241 N.W. 700, 91 A.L.R. 1308 (1932) which we find quite relevant:

> "The justice of such a statute is obvious. It places no greater or different burden upon the nonresident than upon the resident. * * * A nonresident who gets all the benefit of the protection of the laws of this state with regard to the office or agency and the business so transacted ought to be amenable to the laws of the state as to transactions growing out of such business upon the same basis and conditions as govern residents of this state. * * * 'It makes no hostile discrimination against nonresidents, but tends to put them on the same footing as residents.' "

Mr. Justice Black expressed this same policy in the light of contemporary conditions in McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957):

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. * * * With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party to defend himself in a state where he engages in economic activity."

To be sure, the voices urging the extension of bases of personal jurisdiction by legislative action have not been without dissent,[30] but, if anything, the arguments that have now been made for more than half a century in favor of such legislation sound more strongly than when first voiced in 1919 by Professor Austin Scott in his landmark article on the subject.[31]

Having found both that a statute is necessary to provide the basis of jurisdiction which plaintiff relies on here and that Colorado does not have such a statute, we need say no more. It most certainly is not within our province to invade the legislative arena. Unless or until the Colorado legislature does pass such a statute we do not think it possible to subject a nonresident natural person doing business within the State of Colorado to the personal jurisdiction of this Court by means of substituted service of process. Inasmuch as the complaint alleges the requisite diversity and jurisdictional amount, venue is proper in this jurisdiction if plaintiff is able to obtain personal service of process within this jurisdiction. Our decision here relates only to the attempt to bring defendant within the jurisdiction of this Court by means of substituted service of process. Accordingly, it is

Ordered that the original and the alias service of process be, and the same are, hereby quashed.

**29.** Developments in the Law—State Court Jurisdiction, 73 Harv.L.Rev. 909, 1014 (1960).

**30.** See, e. g., Ehrenschweig, Pennoyer is Dead—Long Live Pennoyer, 30 Rocky Mt.L.Rev. 285 (1958); Note, A Reconsideration of "Long-Arm" Jurisdiction, 37 Ind.L.J. 333 (1962).

**31.** Scott, Jurisdiction Over Nonresidents Doing Business Within a State, 32 Harv. L.Rev. 871 (1919).